

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| UNITED STATES OF AMERICA, | |
|---|---|
| Plaintiff, | 8:21CR193 |
| vs. | PLEA AGREEMENT |
| JAMAL D. HOLDMAN, | |
| Defendant. | |

IT IS HEREBY AGREED between the plaintiff, United States of America, through its counsel, Steven L. Russell, Acting United States Attorney and Christopher L. Ferretti, Assistant United States Attorney, and defendant, Jamal D. Holdman, and Michael J. Hansen, counsel for defendant, as follows:

I

## THE PLEA

A. CHARGES.

Defendant agrees to plead guilty to Counts 1 and 7 of the Indictment and agrees to the relevant conduct with respect to Counts 2 through 6. Count 1 charges a violation of Title 21, United States Code, Section 846. Count 7 charges a violation of Title 18, United States Code, Section 924(c)(1)(A). Defendant further admits paragraphs 4(a)-(e) and 4(g) of the Forfeiture Allegation and agrees that the specific property described in those paragraphs is subject to criminal forfeiture. Defendant further agrees to administratively forfeit to the Drug Enforcement Administration the Ruger EC95 9mm handgun, seized on or about June 21, 2021, as described in paragraph 4(f) of the Forfeiture Allegation. Defendant agrees that Defendant is the sole and rightful owner of the specific property identified in paragraph 4(f) of the Forfeiture Allegation and that to the best of Defendant's knowledge, no one else has any ownership or other interest in the property.

Defendant agrees that the United States may institute civil judicial or administrative forfeiture proceedings against all forfeitable assets in which Defendant has an interest and that Defendant will not contest any such forfeiture. Defendant waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging

instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. Defendant understands that the forfeiture of assets is part of the sentence that may be imposed in this case and waives any failure by the Court to advise Defendant of this, pursuant to Federal Rule of Criminal Procedure 11(b)(1)(J), at the time Defendant's guilty plea is accepted.

B.   In exchange for the defendant's plea of guilty as indicated above, the United States agrees as follows:

   1.   The United States will move to dismiss Counts 2 - 6, and 8, and paragraph 4(h) of the Forfeiture Allegation at the time of sentencing.

   2.   The United States agrees that the defendant will not be federally prosecuted in the District of Nebraska for any additional drug trafficking and firearms crimes as disclosed by the discovery material delivered to the defendant's attorney as of the date this agreement is signed by all parties, other than as set forth in paragraph A, above. This agreement not to prosecute the defendant for specific crimes does not prevent any prosecuting authority from prosecuting the defendant for any other crime, or for any crime involving physical injury or death.

## II
## NATURE OF THE OFFENSE

A.   ELEMENTS EXPLAINED.

Defendant understands that the offense to which defendant is pleading guilty has the following elements:

COUNT 1

1. Two or more persons reached an agreement or came to an understanding to distribute or possess with intent to distribute the controlled substances identified in the Indictment;
2. Defendant voluntarily and intentionally joined in the agreement or understanding, either at the time it was first reached or at some later time while it was still in effect; and
3. At the time the defendant joined in the agreement or understanding, he knew the purpose of the agreement or understanding.

COUNT 7

1. Defendant committed the elements of a drug trafficking crime prosecutable in

2

Federal Court;

2. Defendant knowingly possessed a firearm;

3. That the possession of the firearm was in furtherance of a drug trafficking crime.

B.  ELEMENTS UNDERSTOOD AND ADMITTED - FACTUAL BASIS.

Defendant has fully discussed the facts of this case with defense counsel. Defendant has committed each of the elements of the crime, and admits that there is a factual basis for this guilty plea. The following facts are true and undisputed.

1. In the fall of 2019 investigators accessed an online dark net marketplace called "Empire Market"[1] and observed vendor "norco_king"[2] was advertising the sale of pharmaceutical controlled substances such as Oxycodone, Hydrocodone, and pressed "M30" pills.

2. Over the course of the investigation, investigators made a series of controlled buys of pharmaceutical controlled substances from norco_king on the dark net using an undercover identity. Norco_king accepted payment via Bitcoin and later Monero, both cryptocurrencies. The parcels containing the drugs were mailed from California to an undercover address in Omaha, Nebraska. The controlled purchases were made as follows:

   a. On October 31, 2019, investigators made a controlled purchase of 25 Oxycodone pills from Norco_King via Empire Marketplace. Oxycodone is a Schedule II controlled substance Payment was made via Bitcoin through the marketplace. Codefendant Jamal Holdman's fingerprints were later found on the parcel containing the order.

   b. On February 11, 2020, investigators made a controlled purchase of 25 Oxycodone pills from Norco_King via Empire Marketplace. Payment was made via Bitcoin through the marketplace. Investigators recovered 27 Oxycodone pills and 2 Alprazolam pills. Alprazolam is a Schedule IV controlled substance.

   c. On March 12, 2020, investigators made a controlled purchase of 25 Oxycodone pills from Norco_king by way of a direct deal via TUNNELGIGGLES@protonmail.com, a TOR-based email address. Payment was made via Bitcoin to a wallet address provided by Norco_king.

---

[1] Defendants also used "White House Marketplace" on the dark net after Empire Market was deactivated in September of 2020.

[2] Defendants also used dark net monikers "norcoking" and "Kingofscripts".

  d. On March 26, 2020, investigators made a controlled purchase of 20 Oxycodone pills from Norco_king through direct deal via TUNNELGIGGLES@protonmail.com. Payment was made via Bitcoin to a Bitcoin wallet address provided by Norco_king. Fingerprints for Holdman were later found on the parcel containing the order. Investigators received Oxycodone and Lorazepam. Loreazepam is a Schedule IV controlled substance.

  e. On October 13, 2020, investigators made a controlled purchase of 23 Hydrocodone 5 mg pills from NORCOKING via WHITE HOUSE Dark Net Marketplace. Payment was made via Monero through the marketplace. Agents received 12 Hydrocodone 10mg pills. Hydrocodone is a Schedule II controlled substance.

3. Jamal Holdman was observed on surveillance video mailing these packages from several post offices in the vicinity of Desert Hot Springs, California. Investigators later obtained a search warrant for a package mailed by Holdman and confirmed that it contained hydrocodone and morphine. Holdman's fingerprints were also found the back side of an address label affixed to a parcel from norco_king/Empire Market that was seized during a during a law enforcement knock and talk at another customer's address in January of 2021.

4. On June 21, 2021, investigators executed a search warrant at Holdman's residence in Desert Hot Springs. Upon searching the residence, investigators seized approximately 21,000 pills including a significant number of pharmaceutical controlled substances in Holdman's bedroom, as follows:

  a. Schedule II controlled substances including, but not limited to the following opioids: Oxycodone, Hydrocodone (in pill and liquid form), Diphenoxylate, Morphine Sulfate, Hydromorphone, Tapentadol, Methadone, Tramadol, and;

  b. Schedule II controlled substances including but not limited to the following amphetamines: Dexmethylphenidate, Dextroamphetamine, Lisdexamfetamine (Vyvanse), Methylphenidate, and

  c. Schedule IV controlled substances including but not limited to the following benzodiazepines: Lorazepam, Alprazolam, Clonazepam, and Triazolam.

5. In addition, investigators seized 420 pressed "M30" pills, as well as USPS priority

mailboxes and pre-paid labels for orders to include one that was addressed to be shipped to Nebraska. Although the color and markings on the "M30" tablets indicated they contained Oxycodone, they were later confirmed through laboratory testing to contain Fentanyl, a Schedule II controlled substance. Investigators seized two firearms (as further described in paragraphs 4(f)-(g) of the Forfeiture Allegation, computers, and Holdman's Apple iPhone. One firearm, a Beretta 92X 9mm handgun was found in Holdman's bedroom closet, and the other, a Ruger EC95 9mm handgun was found in a dresser in his bedroom. All of the substances were found in the closet in the same bedroom.

6. During a post-Miranda interview with Holdman, he admitted that he packaged and shipped the controlled substances. Holdman stated that the supplier of the drugs and the person who ran the dark net vendor profile(s) was Nicholas Decosta. Holdman stated that Decosta would provide Holdman with the names and addresses for each order after which Holdman would prepare the shipping label and mail out the parcels. Holdman stated that he would meet with Decosta at public locations as well as at Decosta's residence located in Palm Desert, California.

7. Holdman told investigators he recently met with Decosta on June 20, 2021, at a McDonald's in Palm Desert. Holdman stated that he then traveled to Decosta's residence where Decosta provided Holdman with the list of names and addresses for new orders. The list was located by investigators in Holdman's residence. Holdman provided Decosta's phone number.

8. Holdman provided investigators with the passcode to his Apple iPhone and gave consent for investigators to search his device. Holdman showed investigators Decosta's contact in the phone which was labeled as "ND" with Decosta's phone number. Holdman had installed an encrypted communications app called Signal on his phone. Within the Signal application, agents observed a conversation with "Timbucktooth" associated with Decosta's telephone number. The conversation between Holdman and "Timbucktooth" corroborated the statements made by Holdman in that Decosta was providing Holdman with the information for shipments. A message from Decosta's number to Holdman on the night of June 20, 2021, provided Holdman with an undercover officer's order information from a buy made by the UC on the same day.

9. On the same day they executed the warrant at Holdman's residence, investigators conducted a knock and talk with Decosta at his residence. While speaking to Decosta, the case agent called Decosta's phone number from a blocked number. Decosta's phone began to ring in

Decosta's hand and showed "private number" on the screen.

    10.    Investigators thereafter subpoenaed Verizon for subscriber information for Decosta's phone number, which showed as subscribed to in a plan by Alexis Mrzlak, who at the time was Decosta's girlfriend and mother to their child, at Decosta's address.

### III
### PENALTIES

Defendant understands that the crime to which defendant is pleading guilty carries the following penalties:

A.    COUNT 1
1. A maximum 20 years in prison;
2. A maximum $1,000,000 fine;
3. A mandatory special assessment of $100 per count; and
4. A term of supervised release of not less than 3 years. Defendant understands that failure to comply with any of the conditions of supervised release may result in revocation of supervised release, requiring defendant to serve in prison all or part of the term of supervised release.
5. Possible ineligibility for certain Federal benefits.

B.    COUNT 7
1. A maximum life in prison; and a mandatory minimum of five years;
2. A maximum $250,000 fine;
3. A mandatory special assessment of $100 per count; and
4. A term of supervised release of up to 5 years. Defendant understands that failure to comply with any of the conditions of supervised release may result in revocation of supervised release, requiring defendant to serve in prison all or part of the term of supervised release.
5. Possible ineligibility for certain Federal benefits.

## IV

## AGREEMENT LIMITED TO U.S. ATTORNEY'S OFFICE
## DISTRICT OF NEBRASKA

This plea agreement is limited to the United States Attorney's Office for the District of Nebraska, and cannot bind any other federal, state or local prosecuting, administrative, or regulatory authorities.

## V

## SENTENCING ISSUES

A. SENTENCING AGREEMENTS.

Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), the parties agree the defendant shall receive a sentence to imprisonment not to exceed 24 months as to Count 1, to be followed by a consecutive 60-month sentence to imprisonment as to Count 7. This negotiated agreement resolves all issues related to the case and is the appropriate disposition.

B. "FACTUAL BASIS" AND "RELEVANT CONDUCT" INFORMATION.

The parties agree that the facts in the "factual basis" paragraph of this agreement, if any, are true, and may be considered as "relevant conduct" under U.S.S.G. § 1B1.3 and as the nature and circumstances of the offense under 18 U.S.C. § 3553(a)(1).

The parties agree that all information known by the office of United States Pretrial Service may be used by the Probation Office in submitting its presentence report, and may be disclosed to the court for purposes of sentencing.

## VI

## DEFENDANT WAIVES APPEAL AND COLLATERAL ATTACK

The defendant hereby knowingly and expressly waives any and all rights to appeal the defendant's conviction and sentence, including any restitution order in this case, and including a waiver of all motions, defenses, and objections which the defendant could assert to the charges or to the Court's entry of Judgment against the defendant, and including review pursuant to 18 U.S.C. § 3742 of any sentence imposed, except:

      (a) As provided in Section I above, (if this is a conditional guilty plea); and

      (b) A claim of ineffective assistance of counsel.

The defendant further knowingly and expressly waives any and all rights to contest the

defendant's conviction and sentence in any post-conviction proceedings, including any proceedings under 28 U.S.C. § 2255, except:

  (a) The right to timely challenge the defendant's conviction and the sentence of the Court should the Eighth Circuit Court of Appeals or the United States Supreme Court later find that the charge to which the defendant is agreeing to plead guilty fails to state a crime.

  (b) The right to seek post-conviction relief based on ineffective assistance of counsel.

If defendant breaches this plea agreement, at any time, in any way, including, but not limited to, appealing or collaterally attacking the conviction or sentence, the United States may prosecute defendant for any counts, including those with mandatory minimum sentences, dismissed or not charged pursuant to this plea agreement. Additionally, the United States may use any factual admissions made by defendant pursuant to this plea agreement in any such prosecution.

## VII
## BREACH OF AGREEMENT

Should it be concluded by the United States that the defendant has committed a crime subsequent to signing the plea agreement, or otherwise violated this plea agreement, the defendant shall then be subject to prosecution for any federal, state, or local crime(s) which this agreement otherwise anticipated would be dismissed or not prosecuted. Any such prosecution(s) may be premised upon any information, statement, or testimony provided by the defendant.

In the event the defendant commits a crime or otherwise violates any term or condition of this plea agreement, the defendant shall not, because of such violation of this agreement, be allowed to withdraw the defendant's plea of guilty, and the United States will be relieved of any obligation it otherwise has under this agreement, and may withdraw any motions for dismissal of charges or for sentence relief it had already filed.

## VIII
## SCOPE OF AGREEMENT

A. This plea agreement embodies the entire agreement between the parties and supersedes any other agreement, written or oral.

B. By signing this agreement, the defendant agrees that the time between the date the

defendant signs this agreement and the date of the guilty plea will be excluded under the Speedy Trial Act. The defendant stipulates that such period of delay is necessary in order for the defendant to have opportunity to enter the anticipated plea of guilty, and that the ends of justice served by such period of delay outweigh the best interest of the defendant and the public in a speedy trial.

  C. The United States may use against the defendant any disclosure(s) the defendant has made pursuant to this agreement in any civil proceeding. Nothing contained in this agreement shall in any manner limit the defendant's civil liability which may otherwise be found to exist, or in any manner limit or prevent the United States from pursuing any applicable civil remedy, including but not limited to remedies regarding asset forfeiture and/or taxation.

  D. Pursuant to 18 U.S.C. § 3013, the defendant will pay to the Clerk of the District Court the mandatory special assessment of $100 for each felony count to which the defendant pleads guilty. The defendant will make this payment at or before the time of sentencing.

  E. By signing this agreement, the defendant waives the right to withdraw the defendant's plea of guilty pursuant to Federal Rule of Criminal Procedure 11(d). The defendant may only withdraw the guilty plea in the event the court rejects the plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(5). Furthermore, defendant understands that if the court rejects the plea agreement, whether or not defendant withdraws the guilty plea, the United States is relieved of any obligation it had under the agreement and defendant shall be subject to prosecution for any federal, state, or local crime(s) which this agreement otherwise anticipated would be dismissed or not prosecuted.

  F. This agreement may be withdrawn by the United States at any time prior to its being signed by all parties.

## IX
## MODIFICATION OF AGREEMENT MUST BE IN WRITING

No promises, agreements or conditions have been entered into other than those set forth in this agreement, and none will be entered into unless in writing and signed by all parties.

X

**DEFENDANT AND COUNSEL FULLY UNDERSTAND AGREEMENT**

By signing this agreement, defendant certifies that defendant read it (or that it has been read to defendant in defendant's native language). Defendant has discussed the terms of this agreement with defense counsel and fully understands its meaning and effect.

UNITED STATES OF AMERICA
STEVEN A. RUSSELL
Acting United States Attorney

October 28, 2022
Date

CHRISTOPHER L. FERRETTI
ASSISTANT U.S. ATTORNEY

10-21-2022
Date

JAMAL D. HOLDMAN
DEFENDANT

10-21-2022
Date

MICHAEL J. HANSEN
COUNSEL FOR DEFENDANT

10